THE UNITED, STATES LIFE INSURANCE COMPANY, IN THE CITY OF NEW YORK, RESPONDENT, *v.* THE OSWEGO CANAL COMPANY, APPELLANT.

*Equitable construction of an agreement as to the reconstruction of a building under which a canal extends — right to have the water turned out of the canal — damages arising therefrom, by whom to be paid.*

The owner of property abutting upon both sides of the canal of the Oswego Canal Company brought an action to compel the company to turn the water out of its canal for a sufficient length of time to enable the plaintiff to repair the wall of his building under which the canal extended. This wall, which ran through the center of the canal, had become dilapidated.

In support of this action the plaintiff produced an agreement which provided, among other things, in substance, that the company should have the canal free from obstruction; that the stone piers or center walls of the plaintiff's building might remain for a year and that then iron columns should be substituted therefor, and that these columns, together with the iron columns already there, might remain as long as *that* building stood, but when another building was erected all the iron columns should come out and the building should be supported by side walls and trusses extending from one wall to the other, thus leaving the entire passage-way substantially unobstructed. Nothing was said in the agreement about the manner in which the work should be done, nor was there any agreement on the part of the defendant to turn off the water.

The central walls and piers were not removed within a year, but were allowed to remain, in violation of the agreement, until by the action of the water they became insecure.

*Held*, that, as a matter of equitable relief, the plaintiff was entitled to have the water temporarily removed for the purposes authorized in this agreement.

That the plaintiff was not entitled to maintain the present central wall or piers, but was bound to substitute therefor a row of iron columns, and in case another building was erected to support it by trusses in the manner specified in the agreement.

It appeared that the defendant had refused, in the December previous to the bringing of this action, to accede to the plaintiff's demand that it should then be allowed to do this work, and that, owing to the unsafe condition of the building, the plaintiff had not thereafter been able to rent it.

*Held*, that the loss attendant upon the cutting off of this water should not be charged to the plaintiff, nor should plaintiff's loss of rents be charged to the defendant; that damages should not be allowed to either party.

APPEAL by the defendant from a judgment of the Supreme Court, entered in the office of the clerk of the county of Oswego on the 26th day of February, 1890, after a trial before a referee, upon whose report judgment was entered as follows:

I. That the plaintiff is owner in fee simple of " All that certain tract or parcel of land situated in the fourth ward of the city of Oswego, in the county of Oswego, State of New York, known and distinguished as a part of lot No. 19 in block No. 99, bounded and described·as follows : Being all that part or portion of said lot lying west of the store (now or late) of Cheney Ames on the east bank of the canal and east of the stone foundation on the west bank of the canal; commencing on the stone wall at the north-west corner of Ames' store on the east bank of the canal, thence west on the north line of said lot 71 feet to a line drawn through said lot at the distance of 10 feet east of the outer edge of the easterly wall of the stone foundation erected on said lot west of the canal, thence south in a parallel line to and with the stone wall on the east bank of the canal 66 feet to the south line, thence east on the south line and parallel to and with the north line 71 feet, thence north on the center of the stone wall 66 feet to the place of beginning be the same more or less." Subject to the right of the defendant to maintain its canal across the same ; and as such owner of the said premises the plaintiff is entitled to the full and free use and enjoyment of the same in any way which will not materially abridge or lessen the right of the defendant to the maintenance and enjoyment of its said canal across the same.

II. That the defendant is the owner of an easement across plaintiff's said premises for the passage of water for the purposes of its hydraulic canal.

III. That the plaintiff is entitled to have and maintain its building on said premises, now known as the Hungerford Block, or to erect a new building in place thereof.

IV. That the plaintiff is entitled to maintain and repair the side foundation wall and the present central supports of the building, or to substitute for the latter a single row of iron columns in the center of said canal, and that said present central supports do not materially abridge or lessen defendant's enjoyment of its said easement. And that such single row of iron columns in the center of said canal will not interfere with defendant's enjoyment of its easement.

V. And, it appearing from such report that the said side foundation walls and central supports to the plaintiff's said buildings are partially undermined and destroyed by the action of the water passing through defendant's said canal, and that the plaintiff desires to

.repair said side foundation walls, and to replace said central supports by a single row of iron pillars in the center of, and resting in the bed ·of, said canal.

It is further ordered and adjudged that the defendant, " The ·Oswego Canal Company," and its officers, agents, attorneys and .servants, and each of them, be and they are hereby enjoined and .restrained from causing, allowing or continuing the flow of the water through its said artificial hydraulic canal in the city of Oswego, .across the premises of the plaintiff, hereinbefore mentioned, for the period of fifteen days; the commencement of such period to be fixed .by written notice from the plaintiff to the defendant of ten days, -which notice shall designate the time when the water shall be .withdrawn.

It is further ordered and adjudged that, in case it shall be found .that the plaintiff is unable, with due diligence, to accomplish the .work of repairing or replacing the side foundation walls and central .supports of its building aforesaid within the aforesaid period of fifteen days, that it shall be at liberty to apply to this court upon ·three days' personal notice to the defendant, in writing, to enlarge ·the time for making such repairs as may be reasonable.

VI. It is further adjudged that the plaintiff recover of the defend-.ant for its damage by reason of the wrongful neglect and refusal ·of the defendant to withdraw the water from its artificial hydraulic canal across the plaintiff's premises the sum of eighteen hundred and ·eighty dollars ($1,880), being the amount determined by said report .as the loss of rents of said building, known as the "Hungerford Block," from December 21, 1888, to the date of said report, and .also costs adjudged at the sum of three hundred and seventy-nine .dollars and forty-five cents ($379.45), and two hundred and ninety-five dollars ($295) additional allowance, amounting in all to the sum of six hundred and seventy-four dollars and forty-five cents ($674.45).

*Rhodes, Coon & Higgins,* for the appellant.

*O. P. Buel,* for the respondent.

.MERWIN, J. :

The plaintiff claims to be the owner of a lot on the south side of Bridge street in East Oswego, upon which is a building called the

Hungerford Block. Under this building and across the lot the canal of defendant passes. One of the supports of plaintiff's building is a wall along the center of the canal. This wall is becoming dilapidated so as to render the building insecure, and this action is brought to compel the defendant to turn the water out of its canal a sufficient length of time to enable the plaintiff to repair the wall and to recover damages through loss of rent occasioned, as it is claimed, by the refusal of the defendant on the 21st of December, 1888, to accede to the demand of plaintiff that the water be turned off.

The defendant is a corporation created by chapter 241 of the Laws of 1823, passed April 23, 1823. By section 5 of that act it was provided that the directors of the company " shall have power to explore and designate the route of a canal or mill feeder, and a proportion of the waters of the Oswego river may be taken and conducted out of said river at or above the Oswego Rapid, so-called, at such point or place and in such manner as may be deemed proper, so that the water can thereby be carried down upon the east side and bank of said river to such point or place as may be required by those interested therein," the route designated and the manner of making the canal to be determined upon by an engineer who shall be appointed by and be under the direction of the canal commissioners. By section 6 the corporation had power " to enter upon and take possession of such improved or unimproved lands, not exceeding four rods in width, as shall be necessary for the making of the canal or mill feeder aforesaid and the works thereunto appertaining," and provision was made for payment of damages to the owners of any property that was so taken. Upon the completion of the canal the company was authorized " to sell, let or grant and convey, for a limited time, the use of the water which shall be conveyed in said canal for mills or other hydraulic purposes, to any person or persons owning and occupying lands adjoining thereto, at such price or prices as may be agreed upon by the parties interested." By section 10 it was provided that, if any time thereafter it became necessary to adopt the said canal as a part of the contemplated improvement between Lake Ontario and the Erie canal, " the canal commissioners shall at all times have full power, in behalf of the State, to enter upon and make all necessary alterations that by them shall be deemed advisable, to take and make use of the waters there-

from, for the use and purposes of filling and supplying all locks that may be constructed to connect the said canal with Lake Ontario; and the said canal shall thereafter become the property of this State without any payment or compensation whatever to said company; provided, however, that the right to all the surplus waters of said canal shall be vested in the company hereby incorporated and all persons legally claiming under them, and that they shall be permitted to take, make use of and enjoy the surplus waters of said canal not necessary for filling or supplying the locks that may be erected by the said canal commissioners."

The defendant, under this act, commenced, in 1824, the construction of its canal along the easterly bank of Oswego river, but before its completion across the plaintiff's lot, and in the same year, the State adopted and took possession of it as a part of the canal system of the State, and thereupon it became the property of the State, except the rights to surplus water as reserved in the act. The State made some alterations, and continued to use it as a canal for the passage of boats from its completion, in or about the year 1825, until the completion by the State of a new and enlarged canal, in or about the year 1853, when its use as a canal was discontinued. In the meantime the defendant had made use of the surplus water, giving leases to various parties, and resumed the full control of the canal when it was abandoned by the State.

On the 25th of February, 1823, the surveyor-general of the State gave a certificate of sale to Theophilus S. Morgan of lot 19, in the village of East Oswego, block 99. The lot of plaintiff is part of lot 19. On the 22d of December, 1828, letters-patent were issued to Morgan of lot 19, which were recorded March 26, 1834. Lucius B. Crocker became the owner prior to May 1, 1849, and he, at that date, conveyed to Jesse Bennett, and Bennett, on the 4th of December, 1852, conveyed to Hiram Allen. Each of their deeds contained the clause, " subject to the rights of the Oswego Canal Company and the rights of the State."

In 1854 Allen erected the building in question. The canal runs in a northerly direction through and across the lot and under the building, and extends nearly the entire width of the lot, the east foundation wall of the building being on the east line of the canal

and the west foundation wall of the building being at the south end, substantially identical with the west wall of the canal and at the northerly end some feet west of the west wall of the canal. The building is supported partly by the side foundation walls and partly by a stone wall placed nearly in the center of said canal and partly by two rows of iron posts, four on each side, resting on stone piers in the canal between the side and central walls. Soon after it was built portions of the central wall were cut out, and four piers formed for the support of the center of the building.

In 1871 William W. Pulver, through whom plaintiff derives his title, made an agreement with the defendant in regard to the matters here in controversy. This agreement was under seal and was duly acknowledged and recorded, and both parties now claim advantages under it. Prior to the execution of this agreement Pulver had become the owner of the title of Allen. On the 28th of February, 1871, the canal board, by resolution, passed pursuant to chapter 267 of the Laws of 1857, determined and declared the canal lands in question abandoned, and afterwards, in the same year, and before the agreement above referred to, all the interest of the State in plaintiffs lot was quit-claimed to Pulver's grantor, so far as it could be done consistent with the act of 1857, which provided that, when any of such abandoned canal lands were then used for a hydraulic canal, the conveyance should not prevent the future use of the land for the same purpose, but should expressly reserve the right to continue such hydraulic canal.

This agreement bears date July 31, 1871, and after describing the defendant as party of the first part and Pulver as party of the second part, proceeded as follows:

" Whereas the party of the first part have and own a hydraulic canal on the easterly side of the Oswego river, which crosses lot number nineteen in block ninety-nine in the fourth ward of said city: and whereas the party of the second part is the owner of a building known as Hungerford Block, which is erected over the said canal where it crosses said lot, which building is supported by stone walls on the easterly and westerly sides of said canal, and by stone piers or central walls and iron columns placed in said canal; and whereas the parties hereto desire that their respective rights be clearly and specifically defined, to the end that all contention and

controversy may be avoided; therefore, it is hereby mutually agreed by and between the parties hereto, their successors, heirs and assigns, that the said party of the second part is or claims to be the owner of the fee simple of that portion of said lot crossed by said building, and that the party of the first part has a right of easement across said lot for the purposes and uses specified in its charter, and to have and maintain its canal free from obstruction, and has the right to enter into and upon the same for the purpose of improving or repairing said canal, so as to render it most available for hydraulic purposes during its legal existence, and that the party of the second part has the right to keep and maintain the building aforesaid over the said canal, and to erect another building in its stead in case of the destruction or removal of the one now standing; and the said company consents, so far as its own rights are concerned, that the said iron columns, and any others that may be substituted to replace the piers and central walls aforesaid, may remain as supports to said building so long as it stands, and that the said piers and central walls may remain until they are replaced by iron columns, not to exceed one year from the second day of October, one thousand eight hundred and seventy-one; and that whenever another building is erected in its place and stead it shall be supported by a stone wall on the easterly and westerly sides of said canal and the present iron columns, and the iron columns replacing the central stone wall in said canal shall be removed and the building shall be supported by iron or other trusses extending from the said walls over the canal, so as to sustain and support said building; and that the said iron trusses shall be so erected, placed and situated as to cause no material obstructions to the flow or passage of water through said canal. And the party of the second part, for himself, his heirs and assigns, covenants and agrees that they will remove all rubbish, debris and obstructions from said canal caused by the falling or burning of said building over said canal, or by any materials falling or thrown from said building without any unnecessary delay; to pay to said party of the first part the expenses of such removal if done by said company; and that they will suffer no unnecessary obstructions to be occasioned by said building except said columns, central walls and piers to remain in said canal as aforesaid."

After the execution of the agreement, the matter, as between the

parties, seems to have rested until 1888. The plaintiff became owner August 31, 1878, and its title from Pulver, through intermediate deeds, is, in terms, made subject to the rights of the Oswego Canal Company. On the 21st of December, 1888, the plaintiff served on the defendant a written notice stating that the building was in a dangerous condition, " owing to the weakening and partial removal of the supports of said building· due to the action of the water of your canal," and that it desired " to make the necessary repairs to the supports of said buildings," and requesting that the water be emptied from the canal so that such repairs might be made, notifying the company that if it was not done the plaintiff would hold it responsible for all damages caused to the plaintiff either by reason of its inability to rent the premises on account of the unsafe condition, or by reason of the falling of the building. To this request the defendant did not yield, but, in its reply on December 21, 1888, claimed that the plaintiff's building was wrongfully located over the defendant's canal, and that in case it fell into the canal the plaintiff would be held responsible for all damages. Thereupon this action was commenced on July 27, 1889.

It was held in the court below that the plaintiff was entitled to maintain its building, " and to support the same by the present side foundation walls and central supports, or to substitute for the latter a single row of iron columns in the center of the said canal; " that it has the right " to repair the same, or to substitute for said central supports a row of iron columns in the center of the said canal, and for the purpose of doing such work the plaintiff has the right, and is entitled to have the flow of water in the said canal across from the said plaintiff's premises under said building stopped by the said defendant and the water removed from the said canal for the period of fifteen days, which time should commence upon ten days previous notice in writing from the plaintiff to the defendant; " that the defendant, by reason of its refusal to remove the water, was liable to the plaintiff for the damages sustained by it for loss of rents from December 21, 1888, to the date of the report (December 28, 1889), being the sum of $1,880.

The first question to be determined arises over the claim of defendant that its lessees of water are necessary parties to the action. They are affected by the stoppage of the water, and, therefore, it is

urged they should be heard before the right of plaintiff to have the water turned off is determined. There are a large number of leases and they give the right and privilege of taking and drawing from the canal a certain defined quantity of water for a long term of years at a fixed yearly rent, the water to be drawn in flumes or spouts placed and constructed by the lessees in the manner directed by the company. It is also provided that the company "shall have the right at all times, and from time to time, to stop the water above demised or draw off the water from said canal for a sufficient length of time to make any necessary repairs or alterations in the canal."

We are of the opinion that the lessees were not necessary parties. The defendant, in a certain sense, represents them, and it has the title and control of the canal, as a whole, and any controversy as to such control is properly with the defendant alone.

Is the plaintiff entitled to have the water turned out of the canal to enable it to make the repairs it claims the right to make?

In order to determine this question the agreement of 1871 is to be carefully considered. Pulver then was the owner of the fee, but subject to the rights of the defendant. The claim had apparently been made by the defendant or its lessees that the building or its supports was improperly obstructing the flow of the water. In view of this the agreement was made. It provided, among other things, that the canal company had the right "to have and maintain its canal free from obstruction." It also provided that Pulver had the right to keep and maintain his building over the canal and to erect another in its stead in case of the destruction or removal of the one then standing, and that the iron columns, which were then there upon either side of the central piers or walls, and any others that might be substituted to replace such central piers and walls, might remain as long as that building then there should stand, and that such piers and central walls might remain until replaced by iron columns not to exceed one year from October 2, 1871. Whenever another building should be erected it should be supported by a stone wall on the easterly and westerly sides of the canal with iron or other trusses extending from such walls over the canal, the trusses to be so situated as to cause no material obstruction to the flow of water, and Pulver agreed for himself and assigns " that they will suffer no unnecessary obstruction to be occasioned by said building

except said columns, central walls and piers to remain in said canal as aforesaid." In other words, the company should have the canal free from obstruction, but the stone piers or central walls might remain for a year, then iron columns should be substituted, and these columns, together with the iron columns already there, might remain as long as that building stood, but when another building was erected all the iron columns should come out and the building be supported by side walls and trusses extending from one to the other; thus leaving the entire passage-way substantially unobstructed. Very evidently the central piers or walls were deemed to be an obstruction, and it became the duty of Pulver, in order to carry out the meaning and object of the agreement, to remove them within the year, having the right to substitute therefor iron columns. The obstruction would be materially reduced, and when a new building was erected the obstruction should be entirely removed in the use of side walls with trusses.

The central walls and piers were not removed within the year. They have been allowed to remain, in violation of the agreement, until by the action of the water they have become insecure. This was a result that might have been reasonably expected. It also appears that, in the summer of 1888, the State of New York repaired and reconstructed the bulk-head gates leading the water into defendant's canal, and in order to do so cut the water off entirely from defendant's canal so that it was empty and dry for some four weeks in the summer, during which the plaintiff might have repaired the foundations of its block. No steps, however, were taken in that direction. Does the delay of the plaintiff and its predecessors, from 1871, or the failure of plaintiff to embrace the opportunity furnished in the summer of 1888, affect the right of plaintiff, if ever it had the right, to demand of defendant the removal of the water from the canal for a sufficient length of time to enable the plaintiff to make the proper change in the central supports.

In the agreement nothing is said about the manner in which the work shall be done. There is no agreement by the defendant to turn off the water. It is a matter to be determined upon equitable principles. The plaintiff has not a legal right to have it done. If there was no other way to accomplish the result, it would be

inferred that this was in contemplation when the result was required. The delay might induce the court to impose conditions, and in a proper case might require the payment of damages to parties that might be injured by the temporary loss of water. In the present case there is evidence showing it to be possible, by means of coffer dams, to perform the necessary repairs. Still the referee has found that the removal of the water from the canal is necessary, and that fifteen days is a reasonable time in which to do such work.

We are not disposed to interfere with this finding. It is quite clear that better work can be done in this way, and that it is better for all parties. Nor should the delay or the failure of plaintiff to do the work when the canal was empty in the summer of 1888 preclude the plaintiff from having the benefit of this assistance on the part of defendant. The delay was to a certain extent acquiesced in by defendant. We, therefore, conclude that, as matter of equitable relief, the plaintiff was entitled to have the water temporarily removed for the purposes authorized in the agreement of 1871. Does it follow that plaintiff is also entitled to recover the damages awarded for the loss of rents?

Concededly the plaintiff is bound by the Pulver agreement. If Pulver had performed that agreement, and removed the central wall and piers within the time specified, and substituted iron columns, there would have been no loss of rents for the cause here complained of. Had the plaintiff examined the wall in the summer of 1888, and ascertained its condition, as it perhaps should be presumed to have done, and repaired it while the water was out as the referee finds it might have done, there would have been no loss of rents. The plaintiff now seeks to charge the defendant with this loss because it did not accede to its demand in December following, while, in fact, if it had performed its own duty there would have been no occasion for the demand. If plaintiff's loss is attributable to its own neglect, it should not recover it of defendant. In its notice, the plaintiff did not refer to the Pulver agreement or offer to perform its obligations, it claimed the right generally to repair the supports of its building, thereby inferentially claiming the right to continue its central walls, and the same claim is made in the complaint and appears in the judgment. If in its notice it claimed more than it had a right to, the defendant was not bound to accede

to it. On the part of the defendant it may be said, with some considerable force, that the plaintiff, by reason of its delay and neglect, should compensate the defendant for any loss that may be sustained by turning off the water.

Having in view the situation of both parties, the more equitable course is to allow damages to neither party. It follows that the judgment herein should be modified by providing that the plaintiff is not entitled to maintain the present central wall or piers, but is bound to substitute therefor a row of iron columns, and that, in case another building is erected, it shall be supported in the manner specified in the Pulver agreement.

The judgment should also be modified by striking therefrom the award of damages.

As modified, the judgment should be affirmed, without costs.

HARDIN, P. J., and MARTIN, J., concurred.

Judgment modified as stated in the opinion, and as modified affirmed, without costs to either party; judgment to be settled upon five days' notice before MERWIN, J.